UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re

PACKARD SQUARE, LLC,                    Case No. 17-cv-14078

            Debtor.                    Paul D. Borman
_____/                 United States District Judge

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

PACKARD SQUARE, LLC,

            Appellant,                 Bankr. Case No. 17-52483

v.                                      Hon. Thomas J. Tucker

CAN IV PACKARD SQUARE LLC,
O'BRIEN CONSTRUCTION COMPANY,
WOLFF NETWORKS, LLC,
STARKY'S CONSTRUCTION, INC.,
GEORGETOWN OF ANN ARBOR
CONDOMINIUM ASSOCIATION, and
MCKINLEY, INC.,

            Appellees.
_____/

OPINION AND ORDER AFFIRMING UNITED STATES BANKRUPTCY
JUDGE THOMAS J. TUCKER'S OCTOBER 13, 2017 OPINION AND ORDER
AND DISMISSING THIS BANKRUPTCY APPEAL

In this bankruptcy appeal, the Court is called upon to determine whether United

1

States Bankruptcy Judge Thomas J. Tucker erred in dismissing the Chapter 11 voluntary petition filed by Appellant/Debtor Packard Square LLC ("Packard Square," "Appellant," or "Debtor") and barring the filing of any new bankruptcy case by or against Packard Square for a period of two years from the date of his October 13, 2017 ruling. Appellant argues that the Bankruptcy Court erred in finding that dismissal was in the best interests of both the Debtor and its creditors and abused its discretion in barring the filing of new bankruptcy proceedings by (or against) Packard Square, a first-time filer for protection under the bankruptcy code. Appellee CAN IV Packard Square LLC ("Canyon") argues that neither the dismissal of Debtor's petition nor the two-year bar on new filings was an abuse of discretion and urges this Court to affirm the bankruptcy court in all respects. The matter has been fully briefed and the Court held a hearing on April 11, 2018. For the reasons that follow, the Court AFFIRMS the bankruptcy court and DISMISSES this appeal.

## I.    BACKGROUND

### A.    The Underlying Construction Loan, Foreclosure, and the Appointment of a State Court Receiver

The bankruptcy court's comprehensive recitation of the factual background is repeated here as relevant to this appeal:

> Pre-petition, in October 2014, the Debtor obtained a construction loan from Canyon in the maximum principal amount of $53,783,184,00 (the

"Construction Loan") to finance the construction of "a 360,000 square foot mixed-use development [project] on a six and a half acre site on Packard Street in Ann Arbor, Michigan," including "249 residential units with high-end amenities, nearly 30,000 square feet of retail space and over 450 parking space[s] including an underground parking garage" (the "Project"). The Debtor signed a promissory note, and other loan documents, and granted Canyon a mortgage on the real property of the Project "together with the related easements, privileges and licenses, and the buildings, structures, improvements, fixtures and personal property located [on it]" to secure the Debtor's indebtedness for the Construction Loan. The Debtor also executed an assignment of leases and rents in favor of Canyon.

*In re Packard Square*, 575 B.R. at 771. Judge Tucker continued:

On October 21, 2016, Canyon filed suit against the Debtor in Washtenaw County Circuit Court, in the case of *CAN IV Packard Square LLC v. Packard Square, LLC*, et al., Case No. 16–000990 CB (the "state court case"). In its verified complaint in the state court case, Canyon requested the appointment of a receiver over the property securing its debt, due to the Debtor's alleged failure "to fulfill its obligations to complete construction of improvements for which funds were provided in accordance with the relevant loan agreements" and "to maintain the [p]roperty is a suitable condition." Canyon also sought foreclosure of its mortgage in the state court complaint.

On October 27, 2016, the state court held a hearing in which it heard oral argument regarding the appointment of a receiver. Counsel for Canyon and counsel for the Debtor both appeared at the hearing and argued their respective positions at length, for and against the appointment of a receiver. During the hearing, Canyon alleged, in relevant part, that there had been multiple material defaults by the Debtor, in the form of missing critical construction milestone dates under the terms of the Construction Loan and the mortgage, despite Canyon having granted some extensions of those dates. Canyon alleged that, among other defaults, the Debtor had defaulted by missing the "substantial completion date which was October 25[, 2016]," and that the Debtor had defaulted on its obligation

to enclose the building of the Project by July 1, 2016, which was "a critically important aspect of the [construction] schedule" to avoid damage to the building, from the inclement weather that had already occurred and that would be getting worse due to the approaching winter season. Canyon alleged that although it had worked with the Debtor and extended the original contractually-agreed date of July 1, 2016 to August 26, 2017, the Debtor had also defaulted on its promise to enclose the building by the extended date. According to Canyon, that default still had not been cured, and the building was "still open and exposed to the elements" at the time of the hearing. Canyon also alleged that Gaylor Electric Inc. d/b/a Gaylor, Inc. ("Gaylor") and Jermor Plumbing & Heating, Inc. ("Jermor"), two subcontractors who had worked on the Project but had not been paid, had recorded construction liens against the property subject to its mortgage, and that more liens would soon be filed based on the Debtor's firing of Quandel Construction Group, Inc. ("Quandel"), the former general contractor for the Project. Canyon informed the Court that due to the Debtor's defaults, it had accelerated the promissory note and so the promissory note was due and owing in full. Canyon argued that "under either the [parties'] contract or the Construction Lien Act, the [c]ourt was authorized to appoint a receiver under the current existing circumstances" because the Project was only partially completed; the Debtor had defaulted on its obligations under its contract with Canyon; and the building was not enclosed and at risk of being damaged.

The Debtor argued that although there had been "technical defaults" due to missed construction milestone dates, the Debtor was entitled to an extension of the construction milestone dates of "up to 150 days" due to the force majeure clause in the parties' loan agreement. Debtor also argued that the "fundamental equities" of the case favored denying Canyon's request for the appointment of a receiver.

At the conclusion of the hearing, the state court gave a bench opinion in which it rejected the Debtor's arguments and ruled that it would "appoint McKinley, Incorporated ["McKinley"] as receiver for the [P]roject and that that [would] be done immediately." On November 1, 2016, the state court entered an order appointing McKinley as the receiver (the

4

"Receivership Order").

*In re Packard Square*, 575 B.R. at 771-72.  The bankruptcy court observed:

> In the Receivership Order, the state court made the following findings, among others:
>
> C. [Debtor] has defaulted in the performance of its obligations under the Loan Documents identified and defined in the Complaint and [Canyon] has provided notice of such default.
>
> D. Further, [Debtor] has failed or refused to pay necessary and immediate expenses to preserve and protect the Property, all of which constitutes waste and which jeopardizes the security interest of [Canyon] and other parties having an interest in the Property. In this circumstance, MCL 600.2927 as well as the provisions of the Loan Documents authorize this Court to appoint a receiver.
>
> E. Additionally, the requirements under MCL 570.1122(1) are met in this case, namely:
>
>> (i) The improvements and construction to the Property are incomplete;
>> (ii) The Indebtedness due [Canyon] secured by the Mortgage is in default, and, therefore, the Mortgage is in default; and
>> (iii) [Canyon], the mortgagee, is likely to sustain substantial loss, if the improvements to the Property are not completed.

575 B.R. at 772-73.  The bankruptcy court continued:

> [T]he Receivership Order gave the Receiver broad authority over the Debtor's property and the Project, the purpose of which was "to protect the interests of all interested parties in the Property." The Order gave the Receiver authority and direction not only to protect and preserve the Property, but also to complete construction of the Project:

[T]he Receiver is authorized and directed to take immediate possession and full control of the Receivership Property and to take any and all necessary and appropriate action to effectuate his possession and sole control over same in order to prevent waste and to preserve, secure, safeguard, winterize and complete construction of the Receivership Property.

To this end, the Receivership Order authorized the Receiver to "immediately enter into a loan agreement with [Canyon] to borrow funds to winterize, safeguard, and complete construction of the Receivership Property and to lease and potentially sell such property, in accord with the terms of MCL 570.1122, et seq." The Order authorized the Receiver to borrow up to $19.7 million from Canyon "to, among other things, winterize, safeguard and complete construction of the Receivership Property." Such loan was to be "subject to terms acceptable to [Canyon] and upon the approval of the Court," and was to be secured by a "super priority" lien, "senior to all other liens," on the Receivership Property.

Shortly after its appointment, the Receiver and Canyon jointly sought the state court's approval of proposed loan documents for the Receivership Loan. The Debtor objected, and the state court held a hearing on November 17, 2016, during which the court heard arguments and then granted the joint motion to approve the loan documents. Thereafter, the Receiver and Canyon entered into the Receivership Loan, in a loan agreement dated as of November 22, 2016 and related documents.

*In re Packard Square*, 575 B.R. at 773.

In the state court proceedings, "[t]he Debtor filed a motion for reconsideration of the Receivership Order on December 8, 2016, which the state court denied on December 19, 2016." *In re Packard Square*, 575 B.R. at 774. The Debtor appealed the Receivership Order to the Michigan Court of Appeals, which issued its Per Curiam Opinion affirming the trial court on January 23, 2018. *CAN IV Packard Square LLC*

*v. Packard Square, LLC*, No. 335512, 2018 WL 521843 (Mich. Ct. App. Jan. 23, 2018). The Michigan Court of Appeals held that "the material facts were beyond dispute," recognizing that Packard Square admitted to events of default under the Loan Agreement:

> In this case, the record establishes that the material facts were beyond reasonable dispute. Defendant admitted that it failed to do numerous things required under the Loan Agreement including substantially complete the project by the substantial completion date. Plaintiff gave defendant notice of its defaults, and defendant failed to cure them. The property faced imminent harm if not secured and protected from the elements because of the perils of winter and the multitude of unfinished aspects to the building. We believe that the trial court properly analyzed the evidence submitted by the parties and concluded that the undisputed material facts warranted appointing a receiver.

> The record supports the factual findings and legal conclusions reached by the trial court. Although defendant argued about the degree of completion of aspects of the project, it admitted that at best the project was only around 60% completed. Moreover, defendant conceded that if it continued managing the construction, it required an additional four months, and that it would never be finished by the November 2016 full completion deadline. Defendant also admitted during the hearing that the construction manager it hired roughly nine days before had not completed tasks necessary to secure the project from the weather. Significantly, the exhibits and the affidavits defendant proffered failed to support defendant's contentions that the project was substantially complete or that force majeure events excused its performance and allowed it further lengthy extensions to the construction deadlines. We believe that the trial court properly focused on the material facts for making its decision. It considered all the evidence but correctly refused to focus solely on nonmaterial factual issues before appointing the receiver. Defendant's default, the condition of the property, defendant's likely inability to secure the property before winter, defendant's inability

to complete the project without further delays, defendant's inability to discharge the liens and protect plaintiff's and defendant's interests in the property, all justified the trial court in appointing a receiver. Defendant's admissions and concessions on the record were the material facts pertinent to the trial court's decision. The trial court did not err by not holding a full evidentiary hearing, and it did not abuse its discretion by appointing a receiver.

2018 WL 521843, at *5. The Michigan Court of Appeals expressly upheld the appointment of McKinley as the Receiver:

> Lastly, defendant argues that the trial court erred by appointing McKinley because it managed commercial properties in Ann Arbor and lacked the ability to neutrally manage the project in the best interests of all concerned, and defendant asserts that the trial court erred by only requiring a $20,000 bond from McKinley. We disagree.
>
> MCL 600.2926 authorizes trial courts to appoint receivers and require them to post a bond. MCR 2.622 prescribes the procedure regarding appointment of a receiver and similarly prescribes factors for a trial court's consideration when deciding the amount of the bond to require from the appointed receiver. The record reflects that defendant argued to the trial court that McKinley managed unspecified local commercial properties in competition with defendant. Defendant asserted that McKinley intended only to sabotage the receivership estate for its own personal gain. The trial court considered defendant's argument but found no evidence supporting defendant's conclusory allegations. No evidence before the trial court supported that McKinley lacked the qualifications or ability to act as the receiver.
>
> We believe that the record supports the trial court's conclusion. Other than stating conclusory allegations and unsupported speculation in objection to McKinley defendant failed to submit any evidence that McKinley had a disqualifying conflict of interest or lacked the requisite ability to serve in this case as the receiver. In the absence of evidence to the contrary, we believe that the trial court could rely upon the evidence

that McKinley could adequately protect the receivership estate and plaintiff's and defendant's interests. Accordingly, the trial court did not abuse its discretion by appointing McKinley as the receiver.

2018 WL 521843, at *9.

While the matter was pending in the Michigan Court of Appeals, Canyon and the Receiver on the one hand and the Debtor on the other (as well as other "interested parties" – principally pre-receivership contractors who were not engaged by the Receiver's new general contractor) continued to litigate at the trial court level. At the time of the Debtor's September 5, 2017 initiation of the underlying bankruptcy proceeding, the trial court was scheduled to hear a joint motion by Canyon and the Receiver to increase the total amount of the Receivership Loan in order to complete the project.[1] *In Re Packard Square*, 575 B.R. at 774. Due to the bankruptcy filing, that hearing did not take place. *Id.*

## B.     Proceedings in the Bankruptcy Court

On September 13, 2017, the bankruptcy court heard argument on a number of "first day" motions, including: (1) the Debtor's "First Day Emergency Motion for Order Directing Receiver to Turn Over All Property to Chapter 11 Debtor-In-Possession and Related Relief" ("the Turnover Motion") (Bankr. ECF No. 8); (2)

---

[1] The Receiver was required, under the terms of the Receivership Order, to seek financing from Canyon and to grant Canyon a "super-priority lien" superior to all other loans on the Receivership property.

Canyon's "Emergency Cross-Motion To: (1) Excuse Receiver from Turnover Provisions; and (2) Suspend the Bankruptcy Case ("the Cross-Motion") (Bankr. ECF 28); and (3) First Day Emergency Motion of the Debtor for Entry of Interim and Final Orders (I) Authorizing Debtor to Obtain Post-Petition Financing, (II) Scheduling a Final Hearing, and (III) Granting Certain Related Relief ("the DIP Financing Motion") (Bankr. ECF No. 13). The bankruptcy court subsequently held a two-day evidentiary hearing on the DIP Financing Motion on September 19 and 20, 2017. *In Re Packard Square*, 575 B.R. at 770. In its DIP Financing Motion, the Debtor sought authority to borrow funds necessary to complete the Project from Ardent Financial Fund, II, L.P. ("Ardent"). (ECF No. 5-6, Debtor's Appendix, Ex. F, Debtor's DIP Fin. Mot. PgID 313-397.) The Debtor sought to secure a proposed loan from Ardent with a priming lien superior to Canyon's lien and a super-priority administrative expense. (ECF No. 5-6, DIP Fin. Mot. PgID 339-341.) In a very detailed opinion citing to extensive record evidence following the two-day evidentiary hearing on the DIP Financing Motion, the bankruptcy court denied that motion, concluding that "the Debtor has failed to meet its burden of proving, by a preponderance of the evidence, adequate protection in the form of any equity cushion, let alone an adequate equity cushion, to protect the lien interests of the existing lien holders, including Canyon, if the proposed DIP loan and the priming lien are approved." *In re Packard Square*

10

*LLC*, 574 B.R. 107, 126 (Bankr. E.D. Mich. 2017). Packard Square does not appeal the bankruptcy court's order denying the DIP Financing Motion.

The bankruptcy court also denied the Debtor's Turnover Motion and granted Canyon's Cross-Motion, dismissing the bankruptcy case and entering the two-year bar on new filings. The Debtor does not appeal the bankruptcy court's denial of the Turnover Motion but does appeal the dismissal and the two-year bar on refiling. In ruling on these motions, the bankruptcy court ordered the submission of extensive portions of the trial court record, including a transcript of every hearing held in the state court case, and also considered timely-filed written responses supporting the Debtor's position from creditors claiming to have construction liens for work/labor done or materials provided for the project before the state trial court appointed the Receiver, as well as receiving full briefing from both Canyon and the debtor and holding an extensive hearing on September 13, 2017.[2] 575 B.R. at 775-76. The bankruptcy court also considered timely written responses in support of Canyon's position from the Receiver, the Receiver's general contractor, and subcontractors

---

[2]The following entities filed positions in support of the Debtor: Quandel Construction Group ("Quandel"), Gaylor Electric, Inc. ("Gaylor"), Zeeland Lumber & Supply Co. ("Zeeland"), E.L. Painting Co., and Amthor Steel. 575 B.R. at 776.

working with the Receiver's general contractor.[3]  *Id.* at 775.  Finally, the bankruptcy court heard from the United States Trustee, who appeared at the hearing through counsel.  *Id.*  The United States Trustee took no position on the turnover obligation of the Receiver but argued that if turnover was excused, the bankruptcy court should dismiss rather than suspend the bankruptcy case because, in the Trustee's opinion, suspension was "not going to work in this case." *Id.*

At the lengthy hearing before Judge Tucker on September 13, 2017, on the Turnover Motion and Canyon's Cross-Motions, both Canyon and the Debtor and a number of "interested parties" offered extensive argument on their respective positions.  (ECF No. 5-17, Appellant's Appendix of Exhibits to Brief on Appeal, Ex. Q, *Partial*[4] Transcript of Continuation of September 13, 2017 Hearing, hereinafter

---

[3]  The following parties filed positions in support of Canyon: Georgetown of Ann Arbor Condominium Association, Solar Contract Carpet, Inc., Starkey's Construction, Inc., McKinley, Inc. (the State Court Receiver), O'Brien Construction Co. (the State Court Receiver's general contractor), and Wolff Networks, LLC.  575 B.R. at 776.

[4]  Appellants submitted only those portions of the September 13, 2017 Hearing Transcript in which the Debtor and its supporters argued.  Appellants omitted the entire portion of the Transcript in which Canyon and its supporters presented their case.  This partial submission violates this Court's Case Management Order which requires that *entire* copies of transcripts of hearings and/or depositions be provided to the Court.  This partial submission (which omits pages 106-160 of the transcript of the 9/13/17 hearing) makes it difficult for the Court to cite to the transcript in a cohesive manner.  Consequently, the Court will cite to the partial transcript pages submitted by the Debtor in these proceedings by their PgID number in this Court but will cite to the omitted pages of the 9/13/17 Hearing Transcript, which contain the

"9/13/17 Hr'g Tr. at __") On behalf of the Debtor, the following points were raised,

largely mirroring factual assertions made by Craig Schubiner, the manager and sole

member of the Debtor, in an Affidavit submitted in the Bankruptcy Court proceedings

on September 5, 2017. (ECF No. 5-3, Appellant's Appendix Ex. C, September 5,

2017 Affidavit of Craig Schubiner in Support of Chapter 11 Petition and First

Proceedings, PgID 130-49.) The following were among the points raised by the

Debtor at the September 13, 2017 hearing before Judge Tucker: (1) there have been

no allegations made against the Debtor of fraud, misrepresentation or misuse of funds

(9/13/17 Hr'g Tr. at PgID 1006; 9/5/17 Schubiner Aff. ¶ 21); (2) the Project was 65%

complete as of the petition date (9/13/17 Hr'g Tr. at PgID 1004; 9/5/17 Schubiner Aff.

¶ 7); (3) the only defaults related solely to alleged missed milestones and any normal

lender interested in completing the project would have extended the deadlines

(9/13/17 Hr'g Tr. at PgID 1006; 9/5/17 Schubiner Aff. ¶¶ 16-21); (4) Canyon operates

a business pattern of "loan to own," manufacturing defaults to either own an attractive

property or recover exorbitant fees through increased interest rates (9/13/17 Hr'g Tr.

at PgID 1007; 9/5/17 Schubiner Aff. ¶ 21); (5) the receiver took over when project

was 65% done and it was still 65% done when petition was filed - the receiver has

_____

argument by counsel for Canyon, with reference to the transcript page numbers as
they appear on the transcript of the hearing from the Bankruptcy Docket (17-br-
52483, ECF No. 150).

13

done nothing to move along the completion  (9/13/17 Hr'g Tr. at PgID 1009; 9/5/17 Schubiner Aff. ¶¶ 25, 29-32); (6) the Receiver in ten months spent less than $1,000,000 on hard construction costs  (9/13/17 Hr'g Tr. at PgID 1012; 9/5/17 Schubiner Aff. ¶¶ 25, 33); (7) the Receiver does not have the background necessary to handle the construction of a building from the ground up  (9/13/17 Hr'g Tr. at PgID 1012; 9/5/17 Schubiner Aff. ¶¶ 26-28, 30); (8) all marketing and leasing efforts have ceased since the Receiver took over the project  (9/13/17 Hr'g Tr. at PgID 1013; 9/5/17 Schubiner Aff. ¶¶ 25, 27, 30); (9) the value of the project completed is $93,000,000 and Canyon's debt is grossly overstated (9/13/17 Hr'g Tr. at PgID 1035-36; 9/5/17 Schubiner Aff. ¶ 6); (10) this case needs bankruptcy court expertise, particularly in determining value of liens and Canyon's alleged debt  (9/13/17 Hr'g Tr. at PgID 1094-95; 9/5/17 Schubiner Aff. ¶ 44); (11) $14,000,000 has been paid out in attorney fees, receivership fees, – this is double the full amount of the lien claimants, who could have been paid rather than whittle away the equity cushion (9/13/17 Hr'g Tr. at PgID 1095; 9/5/17 Schubiner Aff. ¶ 41).

Judge Tucker inquired of the Debtor at the September 13, 2017 hearing what the Debtor had done in state court to bring all of these complaints to the attention of the state court.  The Debtor responded that certain creditors filed motions in May against the Receiver for breach of fiduciary duty.  The Debtor conceded that *it* had

14

never filed such a motion but that it had filed motions to compel production of documents. (9/13/17 Hr'g Tr. at PgID 1018-20.) Judge Tucker also inquired why the Debtor waited ten months after the receivership order to file its petition for bankruptcy. The Debtor responded that it had a lender early on in the receivership proceedings prepared to loan enough to "take Canyon out," but Canyon would not provide a pay off letter. The Debtor asserted that when Canyon ultimately provided a pay off amount, the Debtor disputed that amount. The Debtor also claimed that it raised numerous objections to the Receiver's periodic reports but those objections were denied by the trial court without explanation. (*Id.* at PgID 1020-23.)

Judge Tucker questioned Gaylor, one of the subcontractors who spoke in support of the Debtor at the September 13, 2017 hearing, about the motion they allegedly filed in state court for leave to sue the Receiver. Gaylor explained that the motion was denied in a perfunctory order but Gaylor did not know exactly what the state court said in the short order denying the motion. (*Id.* at PgID 1080-82.)[5]

---

[5] The transcripts of the multiple hearings held in the state court proceedings, including the transcript of the hearing on Gaylor's motion challenging the conduct of the Receiver, were filed by Canyon in the bankruptcy court on September 17, 2017, as requested by Judge Tucker at the September 13, 2017 hearing. (Bankr. ECF No. 103, CAN IV Packard Square LLC's Notice of Filing of State Court Docket and Hearing Transcripts.) Judge Tucker expressly acknowledged in his October 13, 2017 Opinion and Order dismissing the petition that he had received these materials and had concluded thereafter that an evidentiary hearing was not required. 575 B.R. at 775-76, n. 5-7 and 780. Washtenaw County Circuit Court Judge Archie Brown, the state trial

Gaylor's counsel explained that they had not "truly teed up" the issue of whether there was a lack of due process in the state court proceedings. (*Id*. at PgID 1083.) Gaylor explained that it is a construction lien claimant (pre-receivership and not selected by O'Brien to continue working on the project) who is not friendly to the Debtor but nonetheless in favor of this bankruptcy because "the alternative is unpalatable." (*Id*. at 1085.) Judge Tucker pointedly asked Gaylor how the project would be completed if there is no DIP Loan and Gaylor responded "that is the million dollar question." In fact Gaylor filed an objection to the DIP Loan motion. (*Id*. at PgID 1087-88.) The lien claimants appearing at the hearing in support of the Debtor each take the position that it is in the best interests of the "creditors" to be in bankruptcy court – they represent that the state court is barely able to keep up with the filings and suggest that the state court cannot handle the breadth of this receivership litigation. (*Id*. at PgID 1089-93.)

On behalf of Canyon, the following points were among those raised at the September 13, 2017 hearing before Judge Tucker, largely mirroring the factual

---

court business judge presiding over the Receivership, had a practice in this case of holding extensive hearings and ruling from the bench, then filing a rather formalistic order referring to the reasons stated on the record. While Judge Brown's reasons stated on the record were not always lengthy, he entertained substantial argument in each instance, giving Judge Tucker a good record of the evidence and argument presented in the state court proceedings.

assertions made by Matthew Mason, in his capacity as Agent for McKinley, in a September 7, 2017 Declaration filed in the Bankruptcy proceedings and included in Canyon's submissions to this Court. (ECF No. 24-1, Appendix to Appellee's Brief on Appeal, PgID 7666-7707.)[6] Canyon argued: (1) this bankruptcy was filed ten months after the Receiver was appointed and six to eight weeks before the first residential units were set to be delivered and occupied (Bankr. ECF No. 150, Transcript Regarding Hearing Held 9-13-17 In Re: First Day Motions at 106; 9/7/17 Mason Decl. ¶ 12, PgID 7669); (2) the project was only 65% complete by Debtor's own calculation at the time the Receiver was appointed and Debtor was not going to meet the October 25, 2016 substantial completion date; (3) since the Receiver took over it secured the premises, fixed at least 48 different defects, took bids on a general contractor, negotiated a guaranteed maximum price ("GMP") of $24.7 million with O'Brien and hired O'Brien as the general contractor who was able to line up a slate of subcontractors despite the bad reputation of the Project with regard to paying subcontractors (9/13/17 Hr'g Tr. at 107; Mason Decl. ¶¶ 5, 10, PgID 7667-68; Mason

---

[6] Mason's September 5, 2017 Declaration attaches as an Exhibit an earlier Affidavit by Mason dated August 30, 2017, that was submitted in the state court proceedings. Both the Declaration filed in this Court and the Affidavit filed in the state court proceedings contain material relevant here. To avoid confusion, the Court will refer to the Declaration/Affidavit paragraph as well as the PgID number from this Court's docket.

Aff. ¶ 2, Ex. 1); (4) the Receiver repaired the relationship of the Project with the City of Ann Arbor and was able to secure temporary certificates of occupancy which would allow occupancy of 31 units as they became complete (9/13/17 Hr'g Tr. at 108; Mason Decl. ¶¶ 12, 18, PgID 7669-70); (5) all receivership claims and debts have been paid except those that were set to pay on the petition date (9/13/17 Hr'g Tr. at 108; Mason Decl. ¶ 11, PgID 7668); (6) the statement that only $1,000,000 has been spent by the Receiver on hard costs is false – there has been $8,000,000 spent, $5,000,000 of which has been paid out and $3,000,000 that was in process when the bankruptcy petition was filed - these are all costs for actual work done on the project (9/13/17 Hr'g Tr. at 108-09; Mason Decl. ¶ 8, PgID 7675); (7) the Debtor's proposals for budget and completion have been entirely unrealistic and inaccurate (9/13/17 Hr'g Tr. at 145-48; Mason Decl. ¶¶ 15-19, PgID 7670-71); (8) since the receivership was filed there have been no material disputes with subcontractors, no new liens have been filed and the first units were set to be occupied by November 15, 2017 (9/13/17 Hr'g Tr. at 109; Mason Decl. ¶¶ 11, 12, PgID 7668-69; Mason Aff. ¶ 31); (9) the lien claimants supporting the Debtor are pre-receivership subcontractors who did not get the work post-receivership and their remedy lies in state court, where many of them have already filed claims (9/13/17 Hr'g Tr. at 114-15); (10) the State Court Receiver filed a Declaration and concurrence in Canyon's cross-motion in the Bankruptcy court to

establish that the allegations of the Debtor and its subcontractors regarding the conduct of the Receiver are false and have been rejected by the state court - there has been no evidence or findings of breach of fiduciary duty or obligations to any party (9/13/17 Hr'g Tr. at 153-55; Bankr. Ct. Docket ECF No. 82, Concurrence and Joinder of State Court Receiver McKinley Inc. In CAN IV Packard Square LLC's Emergency Cross-Motion). Indeed, as discussed *supra*, the Michigan Court of Appeals has affirmed the state court in every respect with regard to its findings and conclusions regarding the competence and fiduciary integrity of the State Court Receiver.

The United States Trustee offered its opinion at the September 13, 2017 hearing that if the bankruptcy court elected to abstain, it should dismiss rather than suspend the case. (*Id*. at 158-59.)

Judge Tucker expressly stated on the record at the September 13, 2017 hearing the basis for his decision to decline the Debtor's counsel's request to reply at that hearing. Judge Tucker reasoned that there was going to be further argument on the DIP motion, that he had received extensive briefing on the dismissal motion, heard extensive argument and was requesting state court transcripts and did not intend to rule that day. (9/13/17 Hr'g Tr. at PgID 1099-1100.) Judge Tucker explained that he was withholding decision whether an evidentiary hearing would be necessary on Canyon's cross-motions until the record had been supplemented with the various state

court records and hearing transcripts that he had ordered Canyon to produce. (*Id*. at 1101-03.) Judge Tucker considered receipt of those transcripts "an urgent matter" in his consideration of the motions before him. (*Id*. at 1102.) Canyon did file the state court transcripts in the bankruptcy court three days after the hearing.

Judge Tucker clearly stated at the September 13, 2017 hearing that the resolution of the DIP motion, on which he had scheduled an upcoming evidentiary hearing, would have a "significant and perhaps basically a determinative impact on the ruling" Canyon's cross-motions to deny turnover and abstain. (*Id*. at 1106-07.) Judge Tucker expressed his understanding, based on the evidence and materials submitted by the Debtor, that if the DIP motion was denied, the Debtor would be left without a source of funds to complete the Project that was in mid-construction and that this would "really tip the scales" in favor of Canyon and the Receiver. (*Id*. at 1106-08.)

## II. APPELLATE JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to hear this appeal. "A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1)." *In re Cusano*, 431 B.R. 726, 729 (B.A.P. 6th Cir. 2010). "For purposes of appeal, an order is final if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Id*. (internal quotation marks and citation omitted). The bankruptcy

court's order dismissing the Debtor's Chapter 11 proceeding and barring future filings ended the litigation and was a final appealable order.

The bankruptcy court's findings of fact "are reviewed under the clearly erroneous standard." *In re Cusano*, 431 B.R. at 730. "'A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 944 (6th Cir. 2007)). "The bankruptcy court's legal conclusions . . . are reviewed *de novo*," meaning that this Court "determines the law independently of the [bankruptcy] court's determination." *In re Cusano*, 431 B.R. at 730. (internal quotation marks and citation omitted) (alteration added).

The bankruptcy court's decisions dismissing the bankruptcy case and barring the filing of subsequent petitions are reviewed for an abuse of discretion. *In re DSC, Ltd.*, 486 F.3d 940, 944 (6th Cir. 2007) ("Dismissal of a bankruptcy case is reviewed for abuse of discretion."); *In re Cusano*, 431 B.R. at 730 ("The bankruptcy court's decision to bar the Debtor from subsequent filings for two years . . . is also reviewed under the abuse of discretion standard."). "'An abuse of discretion occurs only when the bankruptcy court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard.'" *In re Cusano*, 431

21

B.R. at 730 (quoting *Volvo Commercial Fin. LLC the Americas v. Gasel Transp. Lines, Inc. (In re Gasel Transp. Lines, Inc.)*, 326 B.R. 683, 685 (6th Cir. BAP 2005)). "An abuse of discretion will be found when the reviewing court has a 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *In re Peace*, __B.R.__, 2018 WL 1323982, at *1 (B.A.P. 6th Cir. March 15, 2018) (quoting *Huey v. Stine*, 230 F.3d 226, 228 (6th Cir. 2000)). "'The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion.'" *Id.* (quoting *Behlke v. Eisen (In re Behlke*, 358 F.3d 429, 437 (6th Cir. 2004)).

## III. ANALYSIS

### A. Dismissal Pursuant to 11 U.S.C. § 305(a)(1)

Section 305(a) of the Bankruptcy Code, titled "Abstention," allows the bankruptcy court to abstain from hearing a case if it determines that the interests of both creditors and the debtor would be better served by dismissal or suspension of the case:

> (a) The Court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, if at any time if –

> (1) the interests of creditors and the debtor would be better
> served by such dismissal or suspension.

11 U.S.C. § 305(a)(1). "The decision to dismiss under § 305 is discretionary, and

must be made on a case-by-case basis." *In re O'Neil Village Personal Care Corp.*,

88 B.R. 76, 79 (Bankr. W.D. Pa. 1988).

In determining whether "the interests of creditors and the debtors would be

better served" by dismissal or suspension, bankruptcy courts generally consider some

or all of the following factors:

> (1) economy and efficiency of administration;
>
> (2) whether another forum is available to protect the interests of both
> parties or there is already a pending proceeding in state court;
>
> (3) whether federal proceedings are necessary to reach a just and
> equitable solution;
>
> (4) whether there is an alternative means of achieving an equitable
> distribution of assets;
>
> (5) whether the debtor and the creditors are able to work out a less
> expensive out-of-court arrangement which better serves all interests in
> the case;
> (6) whether a non-federal insolvency has proceeded so far in those
> proceedings that it would be costly and time consuming to start afresh
> with the federal bankruptcy process; and
>
> (7) the purpose for which bankruptcy jurisdiction is sought.

*In re Birchall*, 381 B.R. 13, 18 (Bankr. D. Mass. 2008) (citation omitted).  Although

these factors can be useful in providing guidance in a given case, "in determining whether dismissal under § 305(a) is appropriate, courts must look to the factors of the individual cases . . . [and should] be guided by the unique facts of [the] case and look to only the factors or criteria particularly relevant and applicable" in the case under consideration. *In re Iowa Trust*, 135 B.R. 615, 622 (Bankr. N.D. Iowa 1992) (internal quotation marks and citation omitted). "It is the moving party's burden to establish that [dismissal] will better serve the interests of both" creditors and the debtor. *In re Naartjie Custom Kids, Inc.*, 534 B.R. 416, 424 (Bankr. D. Utah 2015). Granting relief under § 305(a) is considered "an extraordinary remedy, in part because it is generally not appealable beyond the level of the District Court [or the BAP]." *In re Orchards Village Investments, LLC*, 405 B.R. 341, 351 (Bankr. D. Oregon 2009).

"[T]he historical and contemporary trend in § 305 case law permits courts to consider a wide variety of factors relevant to the facts of the particular case in determining whether to abstain under § 305." *In re Starlite Houseboats, Inc.*, 426 B.R. 375, 387 (Bankr. D. Kan. 2010) (quoting *In re Spade*, 258 B.R. 221, 231 (Bankr. D. Colo. 2001)). Relevant considerations may include "the motivation of the parties seeking bankruptcy jurisdiction, whether another forum is available to protect the interests of both parties or such a proceeding is already pending, the economy and efficiency of administration, and the prejudice to the parties." *Id*. (citing *In re Spade*,

258 B.R. 231-38). In *In re Starlite*, in concluding that the interests of creditors and the debtor would be better served by dismissal, the bankruptcy court considered the economy and efficiency of allowing the concurrent state court receivership, which had been pending for eight months prior to the petition date, to proceed as factors counseling against starting anew in bankruptcy court. 426 B.R. at 389. *See also In re Newport Offshore Ltd.*, 219 B.R. 341, 354-55 (Bankr. D.R.I. 1998) (noting bankruptcy court's discretionary authority to "dismiss a bankruptcy case or suspend proceedings within it in appropriate circumstances, which may include the pendency of state court receivership proceedings that appropriately serve the interests of involved parties") (citing 2 Collier on Bankruptcy ¶ 305.02[2][c]).

The Debtor distinguishes the cases cited by the bankruptcy court that involved dismissals in favor of state court receivership proceedings, *e.g. In re Starlite*, *supra* and *In re Michael Starbuck, Inc.*, 14 B.R. 134, 135 (Bankr. S.D.N.Y. 1981), as being factually distinct involuntary Chapter 7 petitions filed against debtors that were being liquidated in a state court receivership. (Appellant's Br. 18-19.) The Court acknowledges these factual differences and also acknowledges the general analytical difficulty in finding a voluntary petition to be not in the best interests of the debtor who filed it, *see, e.g. In re Pine Lake Village Apartment Co.*, 16 B.R. 750, 753 (Bankr. S.D.N.Y. 1982) (noting that "it defies credulity to say that the debtor's interest would

25

be better served by dismissal when the debtor voluntarily sought the mechanics of Chapter 11 for the purpose of rehabilitation and a fresh start"). However here, unlike the debtor in *Pine Lake* who continued to deny any act of default on the underlying mortgage, the state court found that the Debtor here was in default, and the Michigan Court of Appeals expressly affirmed that finding as "beyond reasonable dispute." Moreover the trial court found, and the Michigan Court of Appeals affirmed those findings, that the Debtor had mismanaged the Project in several different ways, leading to delays and missed milestones. These facts are established for purposes of this litigation and distinguish this case notwithstanding that the case involves a voluntary petition.

The Debtor argues in its brief on appeal that certain conduct of the Receiver establishes that continuing in the state court receivership is not in the best interests of the Debtor and the creditors. (Appellant's Br. 8-9, PgID 1511-12.) However, many of these arguments have already been made to and rejected by the Washtenaw County Circuit Court Judge presiding over the receivership proceedings, Judge Archie Brown, and the Michigan Court Appeals affirmed in every respect Judge Brown's rulings on the competence of the Receiver and the appropriateness of his conduct. As countless courts have observed, the inquiry under §305(a)(1) is inherently fact specific. In this case, the facts demonstrate a very unstable situation with the Debtor that called for the

appointment of a Receiver.  As the Michigan Court of Appeals observed:

> We believe that the trial court properly focused on the material facts for making its decision. It considered all the evidence but correctly refused to focus solely on nonmaterial factual issues before appointing the receiver. Defendant's default, the condition of the property, defendant's likely inability to secure the property before winter, defendant's inability to complete the project without further delays, defendant's inability to discharge the liens and protect plaintiff's and defendant's interests in the property, all justified the trial court in appointing a receiver. Defendant's admissions and concessions on the record were the material facts pertinent to the trial court's decision. The trial court did not err by not holding a full evidentiary hearing, and it did not abuse its discretion by appointing a receiver.

2018 WL 521843, at *5.

The Debtor is no doubt dissatisfied with the rulings against it in the state court proceedings.  And the Debtor may have hoped to find a more sympathetic ear in the bankruptcy court.  But, as Judge Tucker expressly stated in his Dismissal Order, to the extent that the Debtor or the complaining lien holders feel aggrieved by the state court rulings, their relief is through an appeal to the Michigan Court of Appeals, and on from there – not laterally to the bankruptcy court.  575 B.R. at 782.  *In re Sun World Broadcasters, Inc.*, 5 B.R. 719, 722 (Bankr. M.D. Fla. 1980) (abstaining under § 305 in favor of ongoing state court receivership, finding that "[t]here exists an element of estoppel: a disgruntled player should not be heard to complain at the end of the fourth quarter that the game would have been better played in another stadium" and declining

to act as a "super appellate court for dissatisfied claimants in state court liquidation proceedings").

The Debtor argues that the bankruptcy court erred in determining that, given the denial of its DIP motion, the Debtor had no funds available to complete the Project. The Debtor insists that the bankruptcy court was obligated to "show cause" the Debtor before dismissing or permit the Debtor to present additional testimony or evidence as to the Debtor's ability to finance the Project. But the Debtor cites *no* authority for imposing such an obligation on the bankruptcy court's dismissal here under § 305(a). Neither of the cases cited by the Debtor in support of this "second chance" argument, *In re Luchenbill*, 112 B.R. 204 (Bankr. E.D. Mich. 1990) and *Novak v. DeRosa*, 934 F.2d 401 (2d Cir. 1991), involved abstention under § 305. The Debtor had its opportunity to convince the bankruptcy court that it could obtain financing to complete Project and it failed in that endeavor. Despite the Debtor's claim to the contrary, Judge Tucker gave the Debtor fair warning that the failure of its proposed DIP financing motion would "tip the scales" in favor of the court abstaining. Yet the Debtor made no argument for a "second chance" until filing its motion for reconsideration – presenting new evidence that the bankruptcy court was under no obligation, at that point, to consider. All parties agree that time is of the essence with regard to this partially completed Project. It was not reasonable, on these facts, for the

Debtor to have assumed that if his first request for DIP financing failed, he would be able to return to the drawing board and present another scenario for Judge Tucker's consideration while the time-sensitive project stood idle, with a State Court Receiver, and a GMP contract and subcontractors, ready to complete the Project.

Similarly unavailing is Debtor's claim that it had no idea that the bankruptcy court would consider dismissal of the action, as opposed to suspension. As discussed *supra*, Canyon stated openly at the September 13, 2017 hearing that it was seeking "dismissal or suspension," and the United States Trustee openly expressed its preference at that hearing for dismissal rather than suspension. It strains credulity for the Debtor to claim that it had no idea that dismissal by the bankruptcy court, in response to Canyon's cross-motion under § 305 which expressly allows for "dismissal or suspension," was a possible outcome of the proceedings.

It cannot be disputed that, with the denial of the DIP financing motion, the Debtor had no funds available to it to complete the project. It is also undisputed that the Debtor represented to the bankruptcy court that it could not obtain financing on terms different from those offered in the DIP motion. Judge Tucker appropriately issued his ruling based on the evidence and representations before him. Whether other DIP financing proposals may have fared better is quite beside the point – the Debtor presented a proposal for DIP financing to the bankruptcy court, under circumstances

that all parties agreed was extremely time sensitive, and the bankruptcy court rejected that proposal – a ruling that the Debtor does not challenge on appeal. Following the denial of the DIP motion, it was impossible for the Debtor to finance and complete the Project on the evidence then before the bankruptcy court. If the Debtor is now certain that it can obtain a better deal, a deal that allegedly will "take Canyon out" completely, nothing is preventing the Debtor from proffering that deal outside of bankruptcy. Any issues with "valuing" Canyon's debt can be addressed by the state court. The Debtor argues that the bankruptcy court "abused its discretion by concluding, without any evidence, that the Debtor's bankruptcy case had 'nowhere to go' simply because it denied the Debtor's DIP Financing Motion." (Appellant's Br. 12, PgID 1515.) This was not "an erroneous factual conclusion" based on the evidence presented to the bankruptcy court. On the contrary, the evidence before the bankruptcy court demonstrated that without the success of its DIP Financing proposal, the Debtor was without funds to complete the Project and that the Debtor was unable, as it represented to the Bankruptcy court in its filings, to obtain DIP financing on materially different terms that is presented in the DIP motion. The Debtor provides a number of arguments it "would have made" had it known that the Court was considering dismissal. (Appellant's Br. 15-17, PgID 1518-1520.) But the very section of the bankruptcy code under which Canyon sought relief expressly authorized

30

the bankruptcy court to order dismissal and Canyon expressly stated at the September 13, 2017 hearing that it sought either dismissal or suspension. The bankruptcy court reasonably concluded that abstaining in favor of the ongoing state court receivership proceedings was "in the best interests of the Debtor, the Debtor's equity holder(s), and the creditors" because it would allow "the Debtor's construction Project and development in Ann Arbor to be completed and stabilized (fully rented out essentially), all as soon as possible." 575 B.R. at 781. This was particularly reasonable in light of the finding that "all agree that time is of the essence with this Project." *Id*. The bankruptcy court did not err in dismissing the Debtor's petition.

**B.      The Two-Year Bar on Refiling**

The bankruptcy court's decision to "bar the filing of any new bankruptcy case, by or against the Debtor, for a period of two years," is reviewed for an abuse of discretion. As Judge Tucker explained in his Order denying the Debtor's motion for reconsideration of the Dismissal Order, the bankruptcy court relied on §§ 105(a) and 349(a) as authority for the two-year bar. Section 105(a) grants the bankruptcy court the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . . or to prevent an abuse or process." Section 349(a) authorizes the bankruptcy court, "for cause," to foreclose the filing of a subsequent petition.

As the bankruptcy court explained in its Order denying the Debtor's motion for reconsideration, "[w]ithout such a bar to refiling, the Court has little doubt that the Debtor would file a new Chapter 11 bankruptcy case promptly after dismissal of this case, which would reimpose the automatic stay and once again bring all action on the construction Project and in the state court receivership case to a halt, leading to more of the same delay that the filing of this bankruptcy case did." (Bankr. ECF No. 179, 12/1/17 Order Denying Motion for Reconsideration at 4.) The bankruptcy court further reasoned that "the Debtor would seek to relitigate in such a new bankruptcy case all the same issues that this Court decided in this case, after much effort and expense incurred by all the parties." (*Id.*)

Both the Debtor and the creditors and Canyon agreed that completion of the Project in the most time-efficient manner was in the best interests of ALL parties. Allowing for the refiling of a new bankruptcy case would completely undermine this shared goal. Certainly reasonable persons could see the merit to this exercise of discretion. *In re Peace*, 2018 WL 1323982, at *1. The bankruptcy court did not rely on a clearly erroneous finding of fact, and did not improperly apply the law, when it exercised its discretion under §§ 105(a) and 349(a) to bar the Debtor from refiling for a period of two years to give the Project a chance to complete and succeed. The bankruptcy court reasonably believed that the two-year bar would provide "ample

time for the Receiver to finish completion and stabilization of the Project, and for the state court receivership case to substantially conclude." 575 B.R. at 783.

Likewise, it was reasonable for the bankruptcy court to conclude that "one or more of the creditors" who supported the Debtor's petition "could file an involuntary bankruptcy case against the Debtor, leading to the same result as if the Debtor had filed the new case." Therefore, it was "absolutely necessary" to impose the bar against third parties "[t]o avoid an abuse of the bankruptcy system that would be caused by any such attempted evasion" of the bankruptcy court's abstention. (Bankr. ECF No. 179, Order on Motion for Reconsideration at 4-5.) The bankruptcy court's decision to likewise bar filings against the Debtor was not based on a clearly erroneous finding of fact or an improper application of the law and was not therefore an abuse of discretion.

## IV.  CONCLUSION

For the foregoing reasons, the Court AFFIRMS the October 13, 2017 Order of the Bankruptcy court abstaining and dismissing this bankruptcy matter, and barring the refiling of a new bankruptcy case by or against the Debtor for a period of two

years.  This appeal is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.


                              s/Paul D. Borman
                              PAUL D. BORMAN
                              UNITED STATES DISTRICT JUDGE

Dated:  May 10, 2018


## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 10, 2018.


                              s/Deborah Tofil
                              Case Manager